## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

TAHOE ECOMMERCE, LLC, a Nevada )
limited liability company, )
               Plaintiff, )
     vs. )
  )
HUSSAIN RANA, an individual, dba )
MEATPROCESSINGTOOLS.COM, )
           Defendant. )

3:11-cv-00725-RCJ-WGC

ORDER

_____

     This case arises out of an alleged infringement of Plaintiff's trademark and an alleged violation of a nondisclosure agreement. Plaintiff has moved for summary judgment on all of its claims (ECF No. 32) and to continue trial (ECF No. 33). For the reasons stated herein, the Court denies the motion for summary judgment. The motion to continue trial is denied as moot.

## I.    FACTS AND PROCEDURAL HISTORY

     As alleged in the complaint, Plaintiff Tahoe eCommerce ("Plaintiff" or "Tahoe") sells goods through a website located at www.meatprocessingproducts.com. (*Id.* at 2). In 2011, Plaintiff purchased the business, including all of its tangible and intangible property, from its predecessor, Product Station Inc., through an online brokerage company named Business Brokers of America, Inc. ("BBA"). (*Id.*). Unbeknownst to Plaintiff, however, BBA had previously provided sensitive information pertaining to the business to Defendant Rana ("Rana" or "Defendant"). (*Id.*). Specifically, in March, 2010, Rana expressed an interest in purchasing the business from BBA, and BBA responded, requiring Rana to execute a nondisclosure agreement (the "NDA") prior to receiving any sensitive business information. (*Id.*). Under the terms of the

NDA, Rana was prohibited from using or divulging any confidential information that was provided in conjunction with the NDA. (*Id.*).

Since April, 2009, Plaintiff and/or its predecessor have continuously used the mark "Meat Processing Products" and the corresponding mark/URL "meatprocessingproducts.com" (the "Marks") in conjunction with online retail store services. (*Id.*). Plaintiff alleges that it and its predecessor have expended hundreds of thousands of dollars advertising and promoting the Marks and have made millions of dollars from online sales through the meatprocessingproducts.com website. (*Id.* at 3).

Plaintiff further alleges that, after its predecessor's adoption and use of the Marks, Defendant violated its NDA with BBA, by using the information it obtained from BBA to build substantially similar business, with a confusingly similar name and website. (*Id.* at 3). Specifically, Plaintiff alleges that Defendant willfully and maliciously commenced a business under the names "Meat Processing Tools" and "meatprocessingtools.com." (*Id.*).

On October 7, 2011, Plaintiff filed its complaint, claiming (1) trademark infringement under the Lanham Act;[1] (2) unfair competition; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. (*Id.*, at 4–6 ). On April 29, 2013, after numerous procedural setbacks, including the entry of a default judgment, which was later set aside, (*see* Order, ECF No. 18), and changes in counsel, Plaintiff filed the pending motion for summary judgment, (ECF No. 32), and a subsequent motion to continue trial, (ECF No. 33). More than two months later, and without filing a response, Rana's counsel withdrew, (ECF No. 35). On November 12, 2013, and still without filing a response, Rana elected to defend this case pro se.

---

[1] Plaintiff did not enumerate a state law trademark claim in its complaint, (*see* ECF No. 1), but its arguments in the motion for summary judgment suggest that it is attempting to prosecute one, (*see, e.g.*, ECF No. 32, at 4). If Plaintiff wants to make such a claim, it must first seek leave to amend its complaint.

(*See generally*, Mot. to Extend Time, ECF No. 41). Finally, on December 9, 2013, after this Court's generous grant of a motion to extend time, (*see* Order, ECF No. 43), Rana filed his opposition to the motion for summary judgment, (ECF No. 44). The Court now considers, and ultimately denies, the pending motions.

## II.   LEGAL STANDARDS

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Federal Rule of Civil Procedure 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with

specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

## III.   ANALYSIS

The Court denies the motion for summary judgment, finding that Plaintiff has failed to carry its burden on any of its claims. The Court will first address the trademark infringement and unfair competition claims and then turn to the claims arising under the NDA.

### a.   Trademark Infringement and Unfair Competition

As an initial matter, the Court notes that summary judgment is disfavored in trademark infringement cases. *See Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 901–02 (9th Cir. 2002) ("Likelihood of confusion is a factual determination. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir.2001). Therefore, a district court may grant summary judgment . . . only if 'no genuine issue' exists regarding likelihood of confusion. Fed. R. Civ. P. 56(c). We have cautioned that district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record."); *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009) ("Although disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact

exists."). While this rule may seem obvious, the need to reiterate it apparently is not: The record in the instant case is anything but full. In fact, the Parties have submitted no admissible evidence that would support, let alone require, a finding of a likelihood of consumer confusion. Furthermore, and more importantly, Plaintiff has failed to establish that the Marks are protectable in the first place. Therefore, with respect to the claims arising from Defendant's alleged infringement, the motion for summary judgment must be denied.

The standards for analyzing claims for trademark infringement and unfair competition, under both the Lanham Act and Nevada's common law are, in this case, identical. Accordingly, the Court will analyze these claims together.

Under Section 43(a) of the Lanham Act, the elements of a trademark infringement claim are: (1) a valid, protectable ownership interest in a trademark; and (2) defendant's use of a mark similar to plaintiff's trademark in a manner that is likely to cause consumer confusion. *See* 15 U.S.C. § 1114(1).[2] The elements necessary to make out a trademark infringement claim under Nevada's common law are identical to those required under Section 43(a) of the Lanham Act. *A.L.M.N. v. Rosoff*, 757 P.2d 1319 (1988); *General Motors Corp. v. Let's Make A Deal*, 223 F.Supp.2d 1183, 1188 (D. Nev. 2002). The same is true of an unfair competition claim under the

---

[2] Section 43(a)(1) of the Lanham Act itself provides that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Lanham Act. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (An unfair competition claim requires plaintiff to show (1) a valid trademark and (2) likelihood of confusion.).

### i.  A Valid and Protectable Trademark

Although Plaintiff represents to this Court that it "registered the Marks with both the U.S. Patent and Trademark Office and the U.S. Copyright Office," (Mot. Summ. J., ECF No. 32, at 5), this is untrue. In fact, it appears that the U.S. Patent and Trademark Office ("USPTO") refused to register the Marks, finding, among other things, that "in addition to being merely descriptive, MEATPROCESSINGPRODUCTS.COM appears to be generic for the [associated] services." (USPTO Office Action, May 17, 2012, attached to Opp'n to Mot. Summ. J., ECF No. 44, at 21). It likewise appears that the application for registration was abandoned on July 8, 2013, after Plaintiff failed to timely respond to the UPSTO's December 6, 2012 Notification of Final Refusal. (*Id.* at 15). Therefore, it appears not only that the Marks are unregistered, but also that Plaintiff has misstated the existence of prima facie evidence of a protectable interest. Indeed, the Ninth Circuit has explained:

> Although the plaintiff in a trademark action bears the ultimate burden of proof that his or her mark is valid, federal registration provides *prima facie evidence* of the mark's validity and entitles the plaintiff to a *strong presumption* that the mark is a protectable mark. Where the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive. If the plaintiff establishes that a mark has been properly registered, the burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable.

*Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (emphasis added) (internal citations and quotation marks omitted).

Of course, even if the Marks are not registered with the USPTO, it is well established that Section 43(a) of the Lanham Act "protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). At bottom, "a mark must be capable of distinguishing the applicant's goods from those of others." *Id.* (citing 15 U.S.C. § 1052).

When determining whether a mark is distinctive and, thus protectable, courts generally begin by classifying the relevant mark as either (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Id.* at 768. Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection. *Id.* On the opposite end of the spectrum, generic marks are not entitled to protection because "they are common words or phrases that describe a class of goods rather than an individual product," and thus do not relate exclusively to the trademark owner's product. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872 (9th Cir. 2002) (citation and internal quotation marks omitted); *see also Two Pesos*, 505 U.S. at 768 ("[G]eneric marks—those that refe[r] to the genus of which the particular product is a species—are not registrable as trademarks."). Descriptive marks, however, are not inherently distinctive and cannot be protected when they are "used to describe a product [and] do not inherently identify a particular source." *Two Pesos*, 505 U.S. at 769. Nonetheless, a descriptive mark can become protectable if it "become[s] distinctive of the [trademark user's] goods in commerce." *Id.* (citing 15 U.S.C. §§ 1052(e)). This acquired distinctiveness is known as "secondary meaning." *Id.* Accordingly, to establish that the mark is capable of being protected,

Plaintiff must first establish that the mark is "either (1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.*

In this case, Plaintiff has neither proven nor even pled anything with respect to the Marks' distinctiveness. Indeed, the motion for summary judgment completely ignores the issue, making no attempt to characterize the Marks as inherently distinctive and failing to even argue that they have acquired secondary meaning. Moreover, the USPTO has determined that the Marks are not inherently distinctive, that they lack secondary meaning, and that they may be generic such that they are unprotectable. (USPTO Office Action, May 17, 2012, attached to Opp'n to Mot. Summ. J., ECF No. 44, at 23). While this Court is not bound by the USPTO's conclusions, they certainly demonstrate a material issue of fact: namely, whether the Marks are even protectable. Plaintiff has failed to acknowledge this issue, let alone demonstrate its nonexistence. Accordingly, Plaintiff has failed to carry its burden under the first element of its trademark and unfair competition claims. Therefore, with respect to these claims, the motion for summary judgment is denied.

Furthermore, because the Court is free to treat the USPTO's findings as persuasive and because the instant record appears to lack any evidence showing that the Marks are protectable, the Court invites Defendant to file a motion for summary judgment on this issue. Should Defendant prevail, the trademark and unfair competition claims will fail.

### ii.  Likelihood of Confusion

While the Court recognizes that it need not reach the likelihood of confusion prong, it will lay out the applicable legal standards for the benefit of the Parties:

Assuming that Plaintiff can establish a protectable interest at a later time, which the Court finds unlikely, the trademark and unfair competition claims will turn on whether consumers "are

likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987); *Official Airline Guides v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993) (The issue can be recast as whether "the similarity of the marks is likely to confuse customers about the source of the products.").

In determining the likelihood of consumer confusions, courts generally rely on the eight *Sleekcraft* factors:

> (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of [the] mark; (5) [the Defendant's] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers.

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). However, in the internet context three of the factors are of particular relevance: "(1) the similarity of the marks, (2) the relatedness of the goods and services, and (3) the parties' simultaneous use of the Web as a marketing channel." *Perfumebay.com, Inc., v. eBay Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007). If these three factors suggest that confusion is likely, the remaining *Sleekcraft* factors must weigh strongly against a likelihood of confusion to avoid a finding of infringement. *Id.*, at 1173–75.

Plaintiff has failed to acknowledge, let alone address, any of these factors. Instead, its likelihood of confusion argument consists only of a bald, conclusory claim that "the similarities are sufficient to mislead and confuse the public into believing that the two websites . . . are associated with, or approved by, one another."[3] (Mot. Summ. J., ECF No. 33, at 5). This is

---

[3] The Court notes that Plaintiff has now attempted to substantiate this claim by attaching an unauthenticated screenshot of the allegedly infringing website to its reply brief. (*See* ECF No. 45-1). However, the Court cannot consider such unauthenticated, and therefore inadmissible, evidence while deciding a motion for summary judgment. Moreover, even if the Court could consider such evidence, it would not require the conclusion that there is no triable issue of fact

clearly inadequate, under the controlling standards, to support Plaintiff's motion for summary judgment.

### b.  Breach of Contract  and Breach of the Implied Covenant of Good Faith

Plaintiff's third and fourth claims are premised on the alleged breach of a nondisclosure agreement between Defendant and BBA, to which Plaintiff was neither a party nor a named beneficiary. Therefore, under controlling Nevada law, Plaintiff lacks standing to prosecute these claims, unless it can prove that the NDA was "intended for [its] direct benefit" or that it is the assignee of BBA's potential choses in action. *See Olson v. Iacometti*, 533 P.2d 1360, 1364 (1975).

Although Plaintiff asserts that it is the assignee of BBA's choses in action under the NDA, (Compl., ECF No. 1, at 5), it has failed to point to any record evidence that would support this allegation, (*see* Mot. Summ. J., ECF No 32, at 6–7). At the summary judgment stage, this is simply inadequate; the Court cannot merely accept the pleadings as true, but must instead rely on actual record evidence. *See* Fed. R. Civ. P. 56(c)(1)(A)-(B). Here, Plaintiff has failed to adduce any evidence that it has standing to enforce an agreement between Defendant and BBA. Therefore, the Court cannot conclude that Plaintiff is entitled to summary judgment on the claims arising out of the NDA.

Furthermore, even assuming that Plaintiff has standing to enforce the NDA, the version of the agreement filed with the Court is unauthenticated, and, more importantly, it is too illegible to analyze. (*See* NDA, ECF No. 32-2). Indeed, the Court is simply unable to decipher its terms, let alone conclude the Plaintiff has breached them. Moreover, to the extent that the Court can

---

with respect to the likelihood of confusion element. Furthermore, such evidence would not change the fact that Plaintiff has failed to demonstrate that the Marks are protectable in the first place.

construe what appears to be the second full paragraph, the applicable prohibitions appear vague enough to create a jury question as to whether the alleged conduct constituted a breach. (*See id.*). The Court's hesitation on this point is only underscored by the fact that Plaintiff has failed to either specify what confidential information was entrusted to Defendant or demonstrate how Defendant utilized that information in violation of the express terms of the NDA. (*See* Mot. Summ. J., ECF No 32, at 6–7 ). In contrast, Defendant contends that he relied only on public information while establishing his business. (Opp'n to Mot. Summ. J., ECF No. 44, at 2). Therefore, Plaintiff has failed to demonstrate that there is no triable issue concerning Defendant's alleged breach of the NDA.

Stated simply, the Court cannot grant summary judgment with respect to the claims arising under the NDA for the following reasons: (1) Plaintiff has failed to cite record evidence showing that it has standing to enforce the agreement; (2) Plaintiff has failed to produce an authenticated, legible copy of the NDA for the Court to analyze; and (3) Plaintiff has failed to demonstrate that there is no genuine dispute as to whether Defendant's conduct constituted a breach of the express terms of the NDA. Without such a showing, the Court must allow the contract claims to proceed to trial. The Motion for summary judgment is therefore denied.

### CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment (ECF No. 32) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to continue (ECF No. 33) is DENIED as moot.

IT IS SO ORDERED.

Dated: January 6, 2014

_____
ROBERT C. JONES
United States District Judge